IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PACIFIC SUNWEAR OF CALIFORNIA, INC., a California corporation, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10882 (LSS)<br><br>(Jointly Administered) |

## MEMORANDUM ON CLASS CERTIFICATION

Before me is the Motion of the Class and PAGA Claimants for Leave to File Class Proof of Claim ("Motion").[2] By the Motion, Mr. Charles Pfeiffer and Ms. Tamaree Beeney seek permission to file proofs of claim in a representative capacity. Debtors filed their opposition,[3] and movants filed a reply.[4] I heard argument on June 8 and, with the agreement of the parties, accepted into evidence all of the documents attached to the filings. For the following reasons, and to the extent necessary, I will grant the Motion.

**Background**

In 2011, two lawsuits were filed in California state court against PacSun entities alleging violations of California labor laws relating to wages and hours. In January 2011, Mr. Pfeiffer filed an action under the California Labor Code Private Attorneys General Act

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Pacific Sunwear of California, Inc. (9463-CA); Miraloma Borrower Corporation (0381-DE); and Pacific Sunwear Stores Corp. (5792-CA). The Debtors' address is 3450 East Miraloma Avenue, Anaheim, CA 92806.

[2] Docket No. 378.

[3] Debtors' Opposition to Motion of Class and PAGA Claimants for Leave to File Class Proof of Claim ("Objection"). Docket No. 414.

[4] Reply of the Class and PAGA Claimants in Support of Their Motion for Leave to File Class and PAGA Proof of Claim ("Reply"). Docket No. 432.

of 2004 (the "PAGA").[5]  In May 2011, Ms. Beeney filed a lawsuit that included a putative

class action as well as claims pursuant to the PAGA.  These two lawsuits were coordinated

as a California Judicial Council Coordinated Proceeding[6] with a third, and similar lawsuit,

previously brought by a Ms. She She Strawder.

        While the Strawder class action was previously denied class certification, on

February 26, 2016, two of the counts in the Beeney class action were granted class

certification.  After accepting both factual and expert testimony and hearing oral argument,

Judge Elihu M. Berle made detailed findings in a bench ruling, and entered an order

granting certification as follows:

> Class:  All hourly, non-exempt employees of PacSun working in retail
> locations in the State of California from March 18, 2007 through the date
> the certification Order is entered, concerning Plaintiff's claims for:
>
> a) failing to authorize and permit employees to take duty-free rest
>    breaks every four hours or major fraction thereof and to
>    compensate employees therefor; and
> b) requiring employees to undergo security checks and perform
>    closing duties off-the-clock without compensation.

The certification order was entered on February 26, 2016.[7]  Judge Berle did not certify the

proposed unpaid accrued vacation pay subclass, the business expense subclass, or the meal

period subclass.

        In certifying the class, Judge Berle specifically found, among other things, that Ms.

Beeney's claims were typical of the rest break and off-the-clock claims of unnamed class

members, that common questions of law and fact predominate over individual questions,

and that class treatment is superior because the "potential recovery per class member will

---

[5] Cal. Lab. Code §§ 2698–2699.5.
[6] *In re Pacific Sunwear Consolidated Cases*, Case No. JCCP4671, Superior Court of the State of
California for the County of Los Angeles, Department 323.
[7] Reply Ex. B.

likely be far less than the fixed costs of litigating an individual action."[8]  Though it does not appear in the order, Judge Berle indicated from the bench that his ruling was without prejudice to decertifying the class as Ms. Beeney had yet to present a detailed management plan and demonstrate the validity of the statistical sample, including whether her statistical approach has appropriate validity in this case.[9]

The PacSun bankruptcy cases were filed on April 7, 2016.  On that same day, the Debtors filed a plan of reorganization and accompanying disclosure statement.  A hearing on the disclosure statement is currently scheduled for June 27, 2016.  By motion, the Debtors requested (and ultimately received) approval of a general bar date of June 13, 2016 ("Bar Date").  Notwithstanding Judge Berle's certification of the Beeney class only two months prior to the filing of the petition, the Debtors did not serve the members of the certified class with notice of the Bar Date.  Rather, "informed" by Judge Gropper's decision in *In re Northwest Airlines Corp.*,[10] the Debtors unilaterally chose to limit notice of the Bar Date to employees who worked for PacSun in the two years prior to the filing of the petition.[11]

### The Parties' Positions

By the Motion, Mr. Pfeiffer and Ms. Beeney ask that I bless their filing of representative proofs of claim on behalf of their respective constituents.  They argue that permitting them to file representative claims merely maintains the status quo, which is warranted as: (i) Debtors failed to notice the class claimants of their right to file claims in the

---

[8] Order Granting in Part and Denying in Part Plaintiff Tamaree Beeney's Motion for Class Certification at 2 (Ex. C to Objection).
[9] Class Certification Hr'g Tr. at 45, Nov. 24, 2015 (Ex. D to Objection).
[10] 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007).
[11] Objection ¶ 19 n.8.

bankruptcy case; (ii) the Beeney class was certified after years of arduous litigation and four

failed mediations; (iii) the PAGA claims—brought by both Mr. Pfeiffer and Ms. Beeney—

need not be certified in order for individuals to act in a representative capacity; and (iv) Mr.

Pfeiffer and Ms. Beeney are appropriate representatives.

The Debtors argue that class certification is inappropriate on multiple grounds. First,

the Debtors argue that the "Third Circuit definitively rejected the importation of class action

principles into bankruptcy cases" in its 1973 decision *SEC v. Aberdeen Securities Co.*[12] Second,

the Debtors argue that the movants do not cite any case permitting a PAGA claimant to file

a representative claim in bankruptcy, and this court should not be the first to do so. Third,

the Debtors argue that the Motion is a collateral attack on the Bar Date order and that Ms.

Beeney and Mr. Pfeiffer were obligated to object to that motion, or stay forever silent.[13]

Fourth, the Debtors argue that, to the extent class claims are allowed, I should exercise my

discretion not to permit a class filing in this case. Finally, the Debtors argue that Ms.

Beeney and Mr. Pfeiffer cannot satisfy the requisites of Bankruptcy Rule 7023.

---

[12] 480 F.2d 1121 (3d Cir. 1973).

[13] This argument is rejected out of hand. It is a debtor's burden to provide proper notice to its known creditors. To the extent that a debtor seeks a ruling on the sufficiency of notice to particular creditors, the motion to establish the bar date should specifically reference that issue, which did not happen in this case. It may also behoove a debtor to specifically raise that issue with the judge in court. Moreover, Judge Gropper's decision in *Northwest Airlines* does not establish a generic or global standard for noticing members of an employee class action as the Debtors' position suggests. Rather, *Northwest Airlines* addressed whether notice issues required class certification, not whether notice was proper to any particular member of the class. Further, the decision was specifically limited to "the circumstances of this case." 2007 WL 2815917, at *4. I also note that in *Northwest Airlines* the court presiding over the litigation had ***denied*** class certification prepetition.

Analysis

**I.**    <u>**Mr. Pfeiffer Does Not Need Permission to File His PAGA Claim**</u>

Section 501 of the Bankruptcy Code provides that a creditor may file a proof of

claim.  The proof of claim may be executed by the creditor or the creditor's authorized

agent.[14]  Whether a party is an authorized agent of a creditor is a matter of applicable non-

bankruptcy law.[15]  And, agency may be conferred by statute.[16]

Turning to the statute at issue, the PAGA explicitly provides, in pertinent part:

> Notwithstanding any other provision of law, any provision of this code
> that provides for a civil penalty to be assessed and collected by the
> Labor and Workforce Development Agency or any of its departments,
> divisions, commissions, boards, agencies, or employees, for a violation
> of this code, may, as an alternative, be recovered through a civil action
> brought by an aggrieved employee on behalf of himself or herself and
> other current or former employees pursuant to the procedures specified
> in Section 2699.3.
>
>                              *    *    *
>
> For purposes of this part, "aggrieved employee" means any person
> who was employed by the alleged violator and against whom one or
> more of the alleged violations was committed.[17]

On its face, therefore, the PAGA deputizes an aggrieved employee to bring claims on behalf

of the State of California against an employer for violations of the California Labor Code as

long as certain procedures are met.[18]  As such, the aggrieved employee is an agent of the

---

[14] Federal Rule of Bankruptcy Procedure 3001(b).

[15] *In re Griffin Trading Co.*, 270 B.R. 883 (Bankr. N.D. Ill. 2001) (applying law of the United Kingdom to determine whether Joint Liquidators were "agents" as contemplated by Rule 3001(b)); *In re Thalmann*, 469 B.R. 677 (Bankr. S.D. Tex. 2012) (state law determines whether entity is authorized agent of creditor).

[16] 9 Collier on Bankruptcy ¶ 3001.06 (Alan Resnick & Henry J. Sommer eds., 16th ed.).  *Cf. Nathanson v. NLRB*, 344 U.S. 25, 27 (1952) (National Labor Relations Board is a creditor within the meaning of the Bankruptcy Act with respect to back pay awards, as it is the public agent chosen by Congress to enforce the National Labor Relations Act).

[17] PAGA § 2699.

[18] The requisite procedures have been met here.  *See* Reply Exs. A & B.

5

State of California. But, I need not rely only on a straightforward reading of the statute to arrive at this conclusion as the Supreme Court of California has recently issued two opinions describing the nature of this statute.

In *Iskanian v. CLS Transportation Los Angeles, LLC*[19] and *Arias v. Superior Court of San Joaquin County,*[20] the California Supreme Court interpreted the PAGA in two contexts: whether an employee must comply with class action requirements to bring an action under the PAGA, and whether a waiver of an employee's right to representative action under the PAGA violated public policy and/or was preempted by the Federal Arbitration Act. In *Arias*, the California Supreme Court held that PAGA representatives were not required to comply with class action requirements. And, in *Iskanian*, the California Supreme Court held that, unlike class action lawsuits, a waiver of an employee's right to representative action under the PAGA violated California public policy and was not preempted by the Federal Arbitration Act. Answering these questions required the California Supreme Court to examine both the history and purpose of the PAGA, an analysis which similarly answers the questions before me.

Specifically, the California Supreme Court opined:

A PAGA representative action is therefore a type of *qui tam* action. 'Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been: (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.' The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation. The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit.[21]

---

[19] 327 P.3d 129 (Cal. 2014).
[20] 209 P.3d 923 (Cal. 2009).
[21] *Iskanian*, 327 P.3d at 148 (citations omitted).

Contrasting lawsuits under the PAGA to private actions, the California Supreme Court

further explained that:

> (1) "Representative actions under the PAGA, unlike class action suits for
> damages, do not displace the bilateral arbitration of private disputes
> between employers and employees over their respective rights and
> obligations toward each other."[22]
>
> (2) "[T]he Legislature's purpose in enacting the PAGA was to augment the
> limited enforcement capability of the Labor and Workforce Development
> Agency by empowering employees to enforce the Labor Code as
> representatives of the Agency."[23]
>
> (3) "[A] PAGA litigant's status as 'the proxy or agent' of the state is not
> merely semantic; it reflects a PAGA litigant's substantive role in enforcing
> our labor laws on behalf of state law enforcement agencies."[24]

Because the PAGA authorizes Mr. Pfeiffer to bring suit under California labor laws as a

proxy for or an agent of the State of California, and because he has met the statutory

requisites, Mr. Pfeiffer may file a proof of claim based on those same claims. Court

permission is not required. Naturally, Ms. Beeney may file her PAGA claims as well.

## II. The Class Action Proof of Claim Will Be Permitted with Respect to Class Members Who Would Hold General Unsecured Claims

### A. The Third Circuit Has Not Banned Class Action Proofs of Claim in Bankruptcy Cases

As an initial matter, I reject the Debtors' argument that the Court of Appeals for the

Third Circuit has categorically prohibited the filing of class proofs of claim in bankruptcy

cases. For this proposition, Debtors cite to *SEC v. Aberdeen Securities Co.*[25] In *Aberdeen*, the

Third Circuit reviewed the decision of a district court on claims matters in a case under both

---

[22] *Id.* at 152.
[23] *Id.* at 149.
[24] *Id.* at 316 (emphasis added) (citing *Arias*, 209 P.3d at 933).
[25] 480 F.2d 1121 (3d Cir. 1973).

the Securities Investor Protection Act of 1970 and the Bankruptcy Act.  In that decision, the

court approved the settlement of one customer claim and remanded with respect to another.

    After making those determinations, the Third Circuit affirmed the district court's

refusal to treat each of the claims as part of a class action.  The district court had "declined

to so order contending that the procedures in the bankruptcy proceeding were adequate to

protect the interest of all prospective members of the class."[26]  In affirming, the Third Circuit

first relied on *In re Penn Central Transportation Company*.[27]  Its opinion in *Penn Central* is all of

three paragraphs and the words "class action" appear nowhere.  Rather, the Third Circuit

simply affirmed the district court's discretion in refusing a request by stockholders of Penn

Central's parent company to intervene in the railroad's bankruptcy case.  The district court,

in rejecting the class action argument, among others, found that intervention by

stockholders on a class action theory was inconsistent with the provisions of the Bankruptcy

Act, which permitted the formation of a stockholders' protective committee.  Thus, the *Penn*

*Central* decisions address intervention in the context of committee formation; the decisions

do not address class proofs of claim.

    Second, and more importantly, *Aberdeen* is not couched in *per se* language.  As the

*Aberdeen* Court wrote:

> All creditors were given notice of the insolvency proceedings, and they were
> given the opportunity to file claims.  A ruling by the Court as to one category
> of creditors certainly would apply to all in that group.  Furthermore, this is
> not a plenary suit but a liquidation proceeding which should be concluded as
> expeditiously as possible.  We see no indication that a class action designation
> would have such a result.  The petitioners have failed to show that the method
> they advocated was superior to the procedures being followed by the

---

[26] *Id.* at 1128.
[27] 328 F. Supp. 1273 (E.D. Pa. 1971), *aff'd*, 455 F.2d 976 (3d Cir. 1972) (*per curiam*).

Bankruptcy Court.  The determination made by the District Court on this point is amply supported by the record and well within its discretion.[28]

Given this language, it is my view that *Aberdeen* does not stand for the principle that class claims are, as a rule, impermissible in bankruptcy cases.  Indeed, the above quoted language in many instances echoes the factors courts consider in determining whether to certify a class.

### B.  I Will Exercise My Discretion and Apply Rule 7023

Having so held, I will join the vast majority of courts holding that whether to permit a class action is a matter of discretion.[29]  In exercising that discretion, a two-step analysis is performed.  First, I must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process.  Second, I must determine whether the requirements of Federal Rule of Civil Procedure 23 have been satisfied, such that a class proof of claim may properly be filed.[30]  As stated in *Motors Liquidation*, "[a]lthough the Bankruptcy Code and Rules give no express guidance for the court's exercise of this discretion, a pervasive theme is avoiding undue delay in the administration of the case."[31]  To achieve that result, courts have developed a three-factor framework to help guide the court's discretion in determining if Rule 7023 should be extended.  Those

---

[28] *Aberdeen*, 480 F.2d at 1128.

[29] *See, e.g., Reid v. White Motor Corp.,* 886 F.2d 1462, 1469 (6th Cir. 1989); *In re Charter Co.,* 876 F.2d 866, 873 (11th Cir. 1989); *In re Am. Reserve Corp.,* 840 F.2d 487, 493 (7th Cir. 1988); *Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),* 104 B.R. 659, 662 n.2 (D.N.J. 1989); *Iles v. LTV Aerospace & Defense Co. (In re Chateaugay Corp.),* 104 B.R. 626, 629 (S.D.N.Y. 1989); *In re First Interregional Equity Corp.,* 227 B.R. 358, 366 (Bankr. D.N.J.1998); *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 370 (Bankr. S.D.N.Y.1997); *In re Sacred Heart Hosp. of Norristown,* 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).  *But see Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin., Inc.),* 248 B.R. 60, 72 (Bankr. N.D. Tex. 2000) (class proof of claim is improper in the bankruptcy context).

[30] *In re MF Global Inc.,* 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *In re Motors Liquidation Co.,* 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011).

[31] *Motors Liquidation,* 447 B.R. at 157 (quoting *In re Ephedra Prods. Liab. Litig.,* 329 B.R. 1, 5 (S.D.N.Y. 2005).

factors include: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate.[32]  I will refer to these factors as the "*Musicland* factors."

The first two *Musicland* factors are easily addressed.  As already discussed, Judge Berle granted class certification for Ms. Beeney's rest break and off-the-clock claims for non-exempt employees of PacSun working in stores in California from March 18, 2007 forward. And, despite due process requiring actual notice to known creditors, the Debtors admittedly limited notice of the bar date to employees who worked for the company within the two years preceding the petition date.  As such, not all members of the prepetition certified class received sufficient notice.  The first two factors therefore conclusively weigh in favor of applying Rule 7023 to the matter *sub judice*.

The third *Musicland* factor—the effect of certification on the bankruptcy—also supports applying Rule 7023 here.  Many of the cases cited by the Debtors in opposition to the motion are in factual situations quite different from those here.  For example, in *Musicland*, the request for permission to file a class proof of claim was filed after the bar date, approval of the disclosure statement, voting on the plan, and the beginning of the confirmation hearing.[33]  In contrast, class certification will not adversely affect the administration of the estate here.  As of the filing of the Motion, the bar date had yet to pass, and the claims administration process was in its initial stages, if that.  Further, the Debtors were aware of the claims by virtue of the movants' request for permission to file the

---

[32] *In re Musicland Holding Corp.*, 362 B.R. 644, 654–55 (Bankr. S.D.N.Y. 2007).
[33] *Musicland*, 362 B.R. at 656.

claims, the five year history of the litigation between the parties, and Judge Berle's certification of the class just two months before the bankruptcy case was filed. Hence, and unlike in *Musicland* and the many cases with similar fact patterns, there is neither a laches argument nor a surprise element to this request.

Given this procedural posture, application of Rule 7023 will not hinder the chapter 11 process, but rather will promote efficiency by placing potentially thousands of individual claims before the court in a single class claim with competent counsel representing the interests of the class. The alternative—requiring the traditional claims administration process to play out—would likely result in one or more omnibus objections that would have the same effect of obligating the court to determine the validity of perhaps thousands of similar claims at once (if adequate notice had been given), but likely without counsel representing the interests of individual claimants, as the costs of defending against any objection likely would exceed the value of the claims themselves. Moreover, even if I were to deny class certification, I would extend the bar date to allow each claimant that did not receive actual notice to file individual claims, which would only result in greater delay.[34] By its recent filing for a supplemental bar date, the Debtors seem to recognize this possibility.

The two cases cited by the Debtors do not persuade me otherwise. *Babineau*[35] and *Diabate*[36] are two non-bankruptcy cases in which class certification was denied because factual determinations regarding off-the-clock work at the end of shifts or during breaks would swamp any class determinations. Debtors argue that these cases support exercising my discretion to decline application of Rule 7023 because certifying the class will not avoid

---

[34] *See MF Global Inc.*, 512 B.R. 757 (Bankr. S.D.N.Y. 2014).
[35] *Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009).
[36] *Diabate v. MV Transp., Inc.*, 2015 WL 4496616 (E.D. Pa. July 20, 2015).

11

individualized determinations of claims altogether. But, a careful review of these cases actually supports granting the Motion. As explained by the *Diabate* Court, in both of these cases the court determined that there could be no common proof of *liability*. Further, the *Diabate* Court specifically distinguished its case (requiring individualized determinations) from cases, such as this one, "involving class wage claims where *all* employees in the putative class were subject to employer policies *requiring* them to work off-the-clock prior to and/or after their scheduled shifts."[37] Indeed, class actions challenging companywide policies are frequently certified.[38]

A final consideration that weighs heavily in favor of applying Rule 7023 to this case is the very existence of the PAGA claims. As I have already found, Mr. Pfeiffer does not need permission to file his PAGA proof of claim, and thus I will need to resolve his claim if it is not settled. A review of his PAGA complaint shows that Mr. Pfeiffer alleges the very same claims certified by Judge Berle: off-the-clock work related to required security checks prior to leaving a PacSun store and violation of California's rest period requirements. It will therefore be necessary to address these claims regardless of whether the class action proof of claim is permitted. Accordingly, I will exercise my discretion to apply Rule 7023 to these proceedings.

---

[37] *Id.* at *11.

[38] *Id.* at *11 (citing *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014) (unpaid donning and doffing of protective equipment), *aff'd and remanded,* 136 S.Ct. 1036 (2016) and *Keller v. TD Bank, N.A.*, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) (employer policy that all retain bank employees work off-the-clock to perform pre-shift or post-shift security procedures when they opened or closed a branch)).

### III.    Rule 23[39] is Only Partially Satisfied

In order to certify a class claim, the claimant must satisfy the four elements of Rule 23(a) as well as one of the subsections of Rule 23(b).[40]  The party seeking to certify the class bears the burden to establish each element.[41]  Most cases I have reviewed do not discuss what evidence, if any, must be produced to meet that burden.[42]  Here, I need not determine the extent of the evidentiary basis needed to support a Rule 23 motion as the arguments raised by the Debtors do not implicate disputed factual issues.

Debtors argue that Ms. Beeney has failed to carry her burden under Rule 23 for three reasons: (i) she "lacks standing" to seek class certification for the administrative and priority claims she seeks to pursue in a representative capacity; (ii) she cannot meet the requirements of Rule 23 as to those claims that Judge Berle declined to certify for class treatment; and (iii) she has not demonstrated that a class action is superior to the traditional bankruptcy claims allowance process.[43]  In their reply to the Debtors' objection, the movants clarified that as to Ms. Beeney's lawsuit, they are only seeking to file class proofs of claim for the two claims Judge Berle certified; accordingly that objection is moot.  I will address the other two arguments in the context of my discussion, below.

---

[39] Bankruptcy Rule 7023 incorporates Fed. R. Civ. P. 23.
[40] *In re United Cos. Fin. Corp.*, 276 B.R. 368, 372 (Bankr. D. Del. 2002).
[41] *Id.*
[42] *See, e.g., Walling v. Brady*, 1995 WL 447658 (D. Del. July 19, 1995) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)) (for the limited purpose of deciding the class action motion, court considers pleadings and affidavits accurate).
[43] The same arguments were made with respect to Mr. Pfeiffer, but as set forth *infra*, Mr. Pfeiffer does not need to meet the class action standards in order to file a claim.  His claim is governed by the PAGA, and any argument that Mr. Pfeiffer's claim, as filed, exceeds his authority under the PAGA must be addressed in the claims resolution process.

### A. Rule 23(a) Is Satisfied as to Numerosity, Commonality, and Typicality with Respect to All Unnamed Class Members

Rule 23(a) requires a showing of: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.[44] The Debtors have not challenged numerosity, nor should they. While the numbers in the submissions differ, the class appears to be in excess of 20,000 members. Whether the Debtors challenge commonality, typicality, or adequacy of representation is hard to discern because their submission mashes the concepts together under their "lack of standing" argument. Accordingly, I will go through these separate concepts in order.

Commonality requires the court to determine whether there are "questions of law or fact common to the class."[45] The "threshold of commonality is not high."[46] And, "[b]ecause this requirement may be satisfied by one common issue, it is easily met."[47] Further, factual differences among the claims of the putative class are not fatal to certification.[48] Rather, "what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."[49] Here, Ms. Beeney asserts that all members of the class were subject to companywide policies related to breaks and off-the-clock security checks that violated California law resulting in monetary damages to each class member. This allegation meets the requirement that there be at least one issue common to all class members. Accordingly, the commonality factor is met.

---

[44] Fed. R. Civ. P. 23(a); *United Cos.*, 276 B.R. at 372.
[45] Fed. R. Civ. P. 23(a)(2).
[46] *United Cos.*, 276 B.R. at 373 (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)).
[47] *Walling*, 1995 WL 447658, at *3 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).
[48] *United Cos.*, 276 B.R. at 373 (quoting *Baby Neal*, 43 F.3d at 56).
[49] *Diabate*, 2015 WL 449616, at *9 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 521 U.S. 338, 350 (2011)).

The typicality requirement of subsection (a)(3) is designed to ensure that the interests of the unnamed class members will be adequately protected by the named class members.[50] The question to answer is whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."[51] Again, factual differences between the claimant and the unnamed class members does not defeat typicality.[52] Ms. Beeney's claims, and in particular, the legal theory on which the claims are based—that companywide practices violate California labor laws—are not only typical of the claims of the unnamed class members, they are identical to their claims. This satisfies the typicality requirement.

### B.    Rule 23(a) Is Satisfied with Respect to Adequacy of Representation for Unnamed Class Members Who Would Hold General Unsecured Claims

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[53] The Third Circuit has recently addressed the adequacy requirement, stating that it "has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs."[54] Debtors have not challenged the experience and performance of class counsel, and, thus, I find this requirement to be satisfied.

The Debtors' lack of standing argument appears to go to the second component of adequate representation. They argue that Ms. Beeney's interests "actively conflict with

---

[50] *United Cos.*, 276 B.R. at 373.
[51] *Id.* (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984)).
[52] *Id.* at 374.
[53] Fed. R. Civ. P. 23(a)(4).
[54] *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)).

individuals with wage-and-hour claims entitled to wage priority or administrative claims."[55] The Debtors further argue that as a general unsecured creditor, Ms. Beeney "would personally and pecuniarily benefit from minimizing the hundred-cent claims of priority and administrative claimants to enhance the possibility of confirmation, which is the only way in which any funds will be available to general unsecured creditors."[56] This argument has more heft.

The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."[57] Certain intra-class conflicts may cause a divergence between the interests of the proposed class representative and the unnamed class members rendering the representative plaintiff inadequate.[58] Not all intra-class conflicts, however, will doom the adequacy requirement; the conflict must be "fundamental" to violate Rule 24(a)(4).[59] Various circumstances can create a fundamental conflict, including a conflict concerning "the allocation of remedies amongst class members with competing interests."[60] The facts and holding of *Dewey* are very instructive here.

*Dewey* came to the district court for decision as many class actions do: by the filing of two class action complaints, the consolidation of the class actions and, a multi-year discovery period. Thereafter, a joint motion was filed seeking preliminary approval of a settlement, preliminary certification of the class, and appointment of class counsel. In short, the *Dewey* plaintiffs alleged that certain models of Volkswagen and Audi automobiles had

---

[55] Objection ¶ 68.
[56] *Id.*
[57] *Dewey*, 681 F.3d at 183.
[58] *Id.* at 184–85.
[59] *Id.* at 184.
[60] *Id.*

16

defectively designed sunroofs allowing water to leak into the vehicle in certain

circumstances. The settlement placed vehicles in one of two groups—the "reimbursement

group" or the "residual group"—based on make, model, year and Vehicle Identification

Number. As relevant here, the settlement created an $8 million reimbursement fund to

reimburse class members for certain repairs. The reimbursement fund was made available

first to members of the reimbursement group. If, and only if, funds remained after payment

to members in the reimbursement group, members of the residual group would have access

to the $8 million fund. All of the representative plaintiffs were members of the

reimbursement group. After a fairness hearing at which multiple objections were lodged,

the district court approved both the class certification and the settlement. In so finding, the

district court overruled objections related to intra-class conflicts finding that the divisions

between the classes were based on objective criteria.

On appeal, the Third Circuit reversed. The court found both that there was an intra-

class conflict, and that the conflict was fundamental. The intra-class conflict was evidenced

by the structure of the settlement, which placed class members in two classes based on

model runs, with the class representatives' lawyers drawing the line between the classes.

Because each representative plaintiff was in the reimbursement group, they could not

adequately represent the class members in the residual group. The court found that each

representative plaintiff had an incentive to exclude as many other class members from the

reimbursement group as possible, while plaintiffs in the residual group had an incentive to

bargain their way into the reimbursement group.[61] The court also rejected the argument that

the representative plaintiffs adequately represented the unnamed class members because it

---

[61] *Id.* at 188.

was likely that the $8 million fund was sufficient to cover members in both the

reimbursement class and the residual class. The Third Circuit wrote:

> The adequacy requirement provides *structural* protections during the process
> of bargaining for settlement. The fact that the stars aligned and the class
> members' interests were not actually damaged does not permit representative
> plaintiffs to bypass structural requirements.[62]

Because of this fundamental intra-class conflict, the court found that the class certified

below failed to satisfy Rule 23(a)(4).

There is an important distinction between the *Dewey* scenario and the scenario

presented in the Motion here that, at first blush, might lead one to the opposite conclusion

in this case (i.e., that Rule 23(a)(4) is satisfied). Assuming Ms. Beeney is successful in

establishing liability, the dividing line among the various class members—that is, which

class members will have a general unsecured claim, a priority claim or an administrative

claim—is determined by the Bankruptcy Code, not Ms. Beeney. Ms. Beeney and her

lawyers would have no discretion to place members in one class or another. Nonetheless,

the structural problem identified by the *Dewey* Court is still present. It is not possible at this

time to predict how the litigation, or any settlement, might unfold. Ms. Beeney, who can

only be a member of the general unsecured class,[63] has an incentive to favor general

unsecured creditors over creditors in other classes. Thus, like in *Dewey*, Ms. Beeney cannot

adequately represent all unnamed class members, some of whom will have administrative

and/or priority claims if liability is proven. Accordingly, Rule 23(a)(4), which provides

structural protection during the process of bargaining for settlement, is not met with respect

---

[62] *Id.* at 189 n.19.
[63] Ms. Beeney worked at PacSun from May 2007 to May 2010, well outside the priority and administrative periods.

to those unnamed class members who are not in the general unsecured creditor class.[64]  On

the other hand, Rule 23(a)(4) is met with respect to those unnamed class members who

would hold general unsecured claims.

### B. Rule 23(b) is Satisfied with Respect to all Unnamed Class Members

Rule 23(b) provides in pertinent part:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[65]

The requirement that questions of law or fact predominate "ensure[s] that the class is

sufficiently cohesive to warrant adjudication by representation."[66]  This analysis is more

strenuous than the commonality test of Rule 23(a)(2).[67]  Important to the analysis in this

case, "it has been commonly recognized that the necessity for calculation of damages on an

individual basis should not preclude class determination when the common issues which

determine liability predominate."[68]

Debtors do not seriously contend that common questions of law do not exist in this

case.  Rather, at another point in their brief, they argue that the class action is only the

starting point and that "[i]ndividualized determinations—such as the number of hours

worked and number of breaks missed—will be required to determine the amount each

putative class member is entitled to receive in any distribution."[69]  That argument was not

---

[64] Also, like in *Dewey*, there may be a way to satisfy Rule 23(b).  *See Dewey*, 681 F.3d at 189–90.
[65] Fed. R. Civ. P. 23(b).
[66] *United Cos.*, 276 B.R. at 374–75.
[67] *Id.* at 375 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).
[68] *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *United Cos.*, 276 B.R. at 376.
[69] Objection ¶ 61.

persuasive previously, and is not with respect to this factor either. While the Debtors may be correct that there will be a need for individualized determinations with respect to damages,[70] the issues as to liability are whether the Debtors' companywide policies violate California law. This issue of law forms the basis for the claims of all class members; indeed, if Debtors are correct that they have not violated California law, no class member will have a claim. Accordingly, common questions predominate.

Further, in this instance, a class action is superior to "other available methods for fairly and efficiently adjudicating the controversy." This requirement looks at the management of the class action.[71] Judge Walrath's analysis in *United Companies* is directly on point here. First, as in *United Companies*, it is probably the case that most unnamed class members do not know of their rights under California law, so it is unlikely they would file claims even if they received proper notice. And, as came out at argument, the unnamed class members have not previously received notice of the state court certification. Second, as the Debtors admitted, and as Judge Berle found, the recovery of each class member (regardless of priority) is likely to be relatively small, rendering prosecution of such claims cost-prohibitive. While it is true that the cost of filing a claim is *de minimis*, the cost of defending the inevitable objection is not. Finally, I agree with Judge Walrath, that the filing of a class claim is similar procedurally to a debtor's use of an omnibus objection, which has become ubiquitous in this court. Omnibus objections present (or should present) common issues that are amenable to global resolution. In this instance, I have no doubt that any

---

[70] *But see Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1048 (2016) ("Whether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action . . . The fairness and utility of statistical methods . . . will depend on facts and circumstances particular to [the case].").

[71] *United Cos.*, 276 B.R. at 376.

individual claims filed on the basis of the class action would be met with an omnibus objection. Thus, to permit the filing of a class claim will streamline the resolution of the legal issues. As with omnibus objections, objections to individual claims can be subsequently resolved.[72] For all of these reasons, I find the filing of a class proof of claim to be a superior method to resolve these claims.

## Conclusion

For the reasons set forth above, I will grant the Motion in part and deny it in part. First, I conclude that I need not pre-approve any claims brought under the PAGA. Second, I certify the following:

> Class: All hourly, non-exempt employees of PacSun working in retail locations in the State of California from March 18, 2007 through the 181st day prior to the filing of the bankruptcy petition concerning Ms. Beeney's claims for:
>
> a) failing to authorize and permit employees to take duty-free rest breaks every four hours or major fraction thereof and to compensate employees therefor; and
> b) requiring employees to undergo security checks and perform closing duties off-the-clock without compensation.

Having done so, I observe that I do have concerns that the cost of litigating/resolving these claims not eat up any recoveries that would go to these creditors—if in fact they have valid claims—or other creditors. Accordingly, I encourage the parties to discuss both appropriate

---

[72] *United Cos.*, 276 B.R. at 376.

procedures for determining these claims in an efficient manner, at the least amount of cost

to the estate and the claimants, and a resolution of these claims.  An order will enter.


Dated: June 22, 2016

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE